THOMSON & McKINNON, a limited partnership, and Walter T. O'Hara, Plaintiffs,

v.

SECURITIES AND EXCHANGE COMMISSION, Manuel F. Cohen, Byron D. Woodside, Hugh F. Owens, Hamer H. Budge and Francis M. Wheat, Defendants.

No. 67 Civ. 1423.

United States District Court
S. D. New York.
April 25, 1967.

Hall, Patterson, Taylor, McNicol & Marett, New York City, for plaintiffs; Donald E. McNicol, James J. Marett, Wilmot B. Mitchell, Charles J. Egan, Jr., Peter Siviglia, New York City, of counsel.

Richard M. Phillips, Asst. General Counsel, Securities and Exchange Commission, Washington, D. C., for defendant, Securities and Exchange Commission; Philip A. Loomis, Jr., General Counsel, David Ferber, Sol., Joel J. Rabin, Washington, D. C., of counsel.

## OPINION

FRANKEL, District Judge.

Thomson & McKinnon, a securities brokerage partnership, and Walter T. O'Hara, one of the firm's general partners, brought this action against the Securities and Exchange Commission and its five members as individuals seeking to enjoin in part a pending investigation by that agency. The jurisdiction of this court is asserted to rest upon 28 U.S.C. §§ 1331 and 1337; the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202;

the Administrative Procedure Act, 5 U. S.C. §§ 702, 704–706; and the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. With the filing of their complaint, plaintiffs moved for a preliminary injunction. The suit is without merit, and the motion must be denied.

The undisputed facts, as plaintiffs allege them, are as follows: On August 9, 1963, the District Business Committee for District No. 12 of the National Association of Securities Dealers (NASD) brought a complaint against the plaintiffs herein charging, *inter alia*, that, "pursuant to a compensatory arrangement with H. C. Keister & Company, * * * said firm [Keister] was knowingly and wilfully interposed between Thomson & McKinnon and the best available market to the harm and detriment of their customers." The alleged misconduct was charged as violative of Article III, Sections 1 and 18, of the NASD's Rules of Fair Practice. On the same day the NASD Committee issued its complaint against H. C. Keister, two of its general partners, and one of its employees charging, *inter alia*, the same course of wrongful interpositioning. Over the objections of the plaintiffs herein, the two proceedings were consolidated for hearing by the NASD. Upon the 650-page record thus made, the NASD issued a decision on June 30, 1964, sustaining the charges against plaintiffs, fining the firm $2,000, fining O'Hara $2,000, and suspending the latter for 30 days. A separate decision against Keister & Company and the individuals charged with it was issued on July 2, 1964. The Company was expelled from the Association, the registrations of two of the accused individuals were revoked, and the third individual was fined $1,000.

The Keister group sought review, first by the NASD's Board of Governors, then by the S.E.C. pursuant to Section 15A(g) of the Securities Exchange Act of 1934, 15 U.S.C. §78o—3(g).[1] The plaintiffs here did not appeal. Their counsel upon oral argument of the present motion stated that their reason for not appealing the findings that they had violated the Association's Rules of Fair Practice was their unwillingness to bear the additional expense of such further proceedings.

However that may be, the appeal of H. C. Keister & Company and its two partners (Sorneson and Keister) led inevitably to comments by the Commission touching the nonappealing plaintiffs herein. The Keister appellants argued that they had "merely acted at the behest of [Thomson & McKinnon] and that the public was not harmed by any of [Keister's] * * * actions." Their contention was that they were in a position to obtain better prices than Thomson & McKinnon could; that the use of them by Thomson & McKinnon caused no increased prices to the latter's customers; "and that in any event it was [Thomson & McKinnon's], not the member's responsibility to see to it that the price to the customers was proper." The Commission rejected these arguments upon the record before it and noted that "no evidence was presented by [Thomson & McKinnon] that it checked market makers for the best price of each security involved, before it effected a transaction with [Keister] * * * and that [Keister's] * * * price was equal to or better than such price." It noted, in addition, that Keister had made payments to Thomson & McKinnon employees, observing that this militated against the claim that Keister obtained the best price because "it had access to a more favorable market." In sum, the Commission was

"satisfied that [Keister's] activities as a middleman in fact operated to increase the price paid by [Thomson & McKinnon's] customers for the securities purchased by them and to reduce the amount they received for the securities they sold as compared with the prices [Thomson & McKinnon] might reasonably have expected to

---

1. One of the individuals associated with Keister did not pursue the appeal to the Commission.

realize had it made a bona fide effort to get the best available prices for its customers. * * * Accordingly, [Keister] * * * could not, as it has argued, treat as of no concern to it the question whether the ultimate price to [Thomson & McKinnon's] * * * customers was unfair. A finding that a person is an aider or abetter is established by a showing that he performed acts which he knows or has reason to know will contribute to the carrying out of the wrongful conduct."

Keister also argued before the Commission that the penalties imposed upon it "were excessive in comparison to the milder penalties imposed by the NASD in other cases involving serious violations, and particularly in view of the [lesser penalties imposed upon Thomson & McKinnon and O'Hara] * * * in the companion proceeding." Rejecting this argument, the Commission concluded that it presented no adequate basis for reducing the penalties against the appellants.[2] The Commission observed, however, that the disparity in penalties suggested a potentially troublesome problem. It said in this connection:

"With respect to the suggestion that the sanctions imposed on the member and Keister are harsh when compared with those imposed on T & M and its partner, it should be noted that we have not had the benefit of arguments made on behalf of the latter since they did not appeal. It would be of considerable assistance to us in reviewing cases such as this to have the benefit of a fuller exposition of the judgments and reasons which entered into the determination to apply different sanctions in a case having more than one respondent involved in the activity under scrutiny. Without appropriate justification, the differences in sanctions for persons with seemingly similar responsibility for violations raise questions as to the adequacy of the existing statutory provisions for the review of NASD decisions by us."

Two of the Commissioners (Budge and Wheat) dissented on this last point. They concluded that the disparate penalties were not justifiable, and would have held that the sanctions imposed upon Keister should be reduced.

As appears just below, the comments of the Commissioners in *Keister* relating to the present plaintiffs supply the asserted basis for the present lawsuit. The occasion for the litigation is an order dated September 26, 1966, pursuant to § 21(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u(a), by which the Commission directed a private investigation concerning the information in its "public official files" that plaintiff "Thomson & McKinnon, its employees and others":

(1) engaged in the interpositioning of other broker-dealers between Thomson and McKinnon and the primary market for over-the-counter securities;

(2) participated in the payments of money to Thomson & McKinnon employees to promote such interpositioning; and

(3) failed to disclose such activities to Thomson & McKinnon customers.

In their complaint and application for a temporary injunction, the plaintiffs contend that the Commission must be barred in the investigation thus ordered from inquiring into any of the matters which were involved in the joint NASD trial and the resulting appeal by Keister to the Commission. They concede that the general subject of interpositioning may properly be explored by the Commission, but say that the facts involved in the Keister appeal must now be forever sealed from such inquiry. The grounds for this asserted foreclosure center upon alleged violations of plaintiffs' rights to due process unless the Commission's investigation is thus lim-

2. Upon other grounds, not material here, the Commission did reduce the penalties against the individual Sorneson.

ited. To summarize it as plaintiffs state it, their position comes to this:

(1) While they carefully specify that they are not invoking the privilege against self-incrimination, they claim a "right not to be placed in jeopardy, by investigation or any other proceedings as to the Keister area before a tribunal which has already rejected and prejudged plaintiffs in the Keister area."[3] Plaintiffs do not, and obviously could not, claim a threat of "double jeopardy" in any true sense, but their papers repeatedly assert a danger that they are about to be placed "again in jeopardy * * *."[4]

(2) Referring to the Commission's observations in the Keister appeal concerning the disparity in sanctions, the plaintiffs note that the Commission could not have increased the penalties in an appeal from the NASD. The present investigation must not touch the "Keister area," they say, because it is obvious that the Commission has instituted this proceeding "in order to increase the penalties administered by the NASD, that is to say, to accomplish indirectly, what it could not accomplish directly."[5]

(3) Summarizing their sometimes passionate contentions, plaintiffs say their suit rests "upon the inherent right of Mr. O'Hara and Thomson & McKinnon to a fair trial before an impartial tribunal and not to an 'Alice in Wonderland' trial where the sentence precedes the verdict!"[6]

The foregoing contentions were first raised before the Commission by a motion to limit the investigation. The Commission, after a hearing, denied the motion on March 16, 1967, and the present lawsuit was then brought. The position of the Commission appears to be entirely correct, and that of the plaintiffs entirely erroneous.

■ 1. This court lacks jurisdiction to enjoin, or partially enjoin, the investigation under the familiar doctrine of Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). It seems clear that "the allegations in this case do not make out the kind or degree of over-stepping of the limits of the Commission's power which would bring it within" the narrow exceptions to the rule requiring exhaustion of administrative remedies. M. G. Davis & Co. v. Cohen, 369 F.2d 360, 363 (2d Cir. 1966), reviewing the cases at 362–363. See also Federal Power Commission v. Metropolitan Edison Co., 304 U.S. 375, 58 S.Ct. 963, 82 L.Ed. 1408 (1938); Securities and Exchange Commission v. Andrews, 88 F.2d 441 (2d Cir. 1937); Fontaine v. Securities and Exchange Commission, (1st Cir. 1967). Far from showing any such extraordinary exception, plaintiffs verge on the frivolous when they say the Commission may never again look into a subject it has encountered in the course of performing its lawful and obligatory functions.

2. The jurisdictional point could end the matter. But the pending motion is for a preliminary injunction, and there is as yet no motion by the Commission to dismiss. Cf. M. G. Davis & Co. v. Cohen, supra, 369 F.2d at 362. It is not inappropriate, therefore, to elaborate on the last sentence of the preceding paragraph and state the court's view that plaintiffs have no case on the merits.

The Commission's power to investigate under the Securities Exchange Act of 1934, § 21(a), 15 U.S.C. § 78u(a), extends sweepingly to the exploration of "any facts, conditions, practices, or matters which it may deem necessary or

---

3. Affidavit of William E. Ferguson, par. 2.

4. Id., par. 5. See also the affidavit of plaintiffs' counsel, Donald E. McNicol (par. 42), asserting that unless the injunction sought is granted, the plaintiffs and others associated with them "will be forced to decide between the risk of placing themselves in civil and criminal jeopardy, or of having plaintiffs' constitutional rights violated."

5. Id., par. 33.

6. Id., par. 35.

proper to aid in the enforcement of the provisions of * * * [the Act], in the prescribing of rules and regulations thereunder, or in securing information to serve as a basis for recommending further legislation concerning the matters to which * * * [the Act] relates." It is absurd to say that the Commission may not employ this power to delve further into matters it has encountered in the course of its duties. One of the more elementary reasons for creating such agencies is precisely their ability to accumulate knowledge and "to draw upon the entirety of their specialized experience * * *." Feinstein v. New York Central Railroad Co., 159 F.Supp. 460, 464 (S.D.N.Y.1958) (L. Hand, J.).

It makes no difference that plaintiffs choose to believe the Commission is bent ultimately upon punishing them some more for the misbehavior found by the NASD.[7] The Commission has not announced this objective, and has instituted no proceeding in which further sanctions could be imposed. This is not to say that the Commission is necessarily barred from such a course if it should determine that further adjudicatory proceedings may be justified. It is only to say that it is too early to say. Speculations like those the plaintiffs offer are patently insufficient to block an inquiry for which the Commission itself may well be unable (and is not required) at this stage to specify any ultimate goal.

3. The claim of "bias" and "prejudgment" is misconceived. To begin with, the Commission is at this point investigating, not adjudicating.[8] It may wind up proposing legislation, formulating some new rule, or taking no action of any kind.

But the citation of Alice in Wonderland would be unavailing even if the Commission were embarked upon an adjudication. The asserted prejudgment is found only in pertinent findings the Commission made in a case properly before it.[9] It has been clear for a long time that such expressions, by judicial officers, with or without a "quasi," afford no ground for a claim of disqualifying bias. As the Supreme Court declared in Federal Trade Commission v. Cement Institute, 333 U.S. 683, 703, 68 S.Ct. 793, 804, 92 L.Ed. 1010 (1948),

"judges frequently try the same case more than once and decide identical issues each time, although these issues involve questions both of law and fact. Certainly, the * * * Commission cannot possibly be under stronger con-

---

7. It will be recalled that the two dissenting Commissioners would have cured the disparity by reducing the Keister penalties.

8. This is one among several grounds sharply distinguishing this case from the two decisions upon which plaintiffs place main reliance, Amos Treat & Co. v. Securities and Exchange Commission, 113 U.S.App.D.C., 306 F.2d 260 (1962), and Texaco, Inc. v. F.T.C., 118 U.S.App.D.C. 366, 336 F.2d 754 (D.C.Cir.1964), vacated and remanded on other grounds, 381 U.S. 739, 85 S.Ct. 1798, 14 L.Ed.2d 714 (1965). Both cases involved efforts to disqualify a single Commissioner in "quasi-judicial proceedings [which] entail a fair trial" (306 F.2d at 263)—the first because of the Commissioner's prior participation in an investigation, the second because of an extra-judicial speech held by the court to display prejudgment. While it is not of the first importance, it may be noted that

neither case involved permanently blocking the agency from carrying on the proceeding: "This case does not present a 'rule of necessity' situation." Amos Treat, supra at 267 n. 12. There is no need, in short, to consider how far the doctrine of those cases might go in this Circuit; they obviously fail to approach the conclusion for which plaintiffs contend.

9. The extravagant implications of plaintiffs' position were pursued a little on oral argument of their motion. Asked how his case might stand if the Commission had not found it necessary to mention plaintiffs in its Keister opinion, counsel said he would then have deemed it necessary and appropriate to elicit testimony from the Commissioners to show how their minds had been infected. Cf. United States v. Morgan, 313 U.S. 409, 421–422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941).

stitutional compulsions in this respect than a court."

See also National Labor Relations Board v. Donnelly Co., 330 U.S. 219, 236–237, 67 S.Ct. 756, 91 L.Ed. 854 (1947); Lyons v. United States, 325 F.2d 370, 376, (9th Cir. 1963), cert. denied, 377 U.S. 969, 84 S.Ct. 1650, 12 L.Ed.2d 738 (1964).

Because their suit is not meritorious, plaintiffs' motion for a preliminary injunction is denied.

It is so ordered.

