NEW YORK MERCANTILE
EXCHANGE, Plaintiff,

v.

COMMODITY FUTURES TRADING
COMMISSION, and William T. Bagley,
John V. Rainbolt, II, Read P. Dunn,
Gary L. Seevers, and Robert L. Martin,
Commissioners of the Commodity Fu-
tures Trading Commission, Defendants.

No. 77 Civ. 4538.

United States District Court,
S. D. New York.

Dec. 29, 1977.

William E. Hegarty, Cahill Gordon &
Reindel, New York City, for plaintiff.

Richard A. Levie, Special Counsel, Com-
modity Futures Trading Comn., Wash-
ington, D. C., for defendants.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District
Judge.

On June 16, 1977, the Commodity Futures
Trading Commission instituted an adminis-
trative proceeding before an administrative
law judge[1] to determine whether the New
York Mercantile Exchange (the "Ex-
change") has violated the Commodity Ex-
change Act as amended ("the Act"), 7
U.S.C. § 1, et seq. (Supp.1977). Plaintiff
Exchange thereupon commenced this ac-
tion, and has moved by order to show cause
for a preliminary injunction seeking, inter
alia, to enjoin the Commodity Futures
Trading Commission and its Commissioners
(the "Commission") from pursuing the ad-
ministrative proceeding.[2] The defendant
Commission has moved pursuant to Fed.R.
Civ.P. 12(b)(1) and (6) to dismiss the action
on the grounds that: (1) the court lacks
subject matter jurisdiction in that the Ex-
change has failed to exhaust its administra-
tive remedies; and (2) the Exchange has

---

1. CFTC Docket No. 77–14, In the Matter of
New York Mercantile Exchange.

2. More particularly, the Exchange has moved
for a preliminary injunction enjoining the Com-
mission from seeking to enforce the provisions
of Section 5a(8) of the Act, 7 U.S.C. § 7a(8)
(Supp.1977), and from seeking to impose
against plaintiff any sanctions applicable there-
to, with respect to any by-law, rule, regulation
or resolution of the Exchange which has not
been approved by the Commission in accord-

ance with Section 5a(12) of the Act, 7 U.S.C.
§ 7a(12) (Supp.1977); from seeking to enforce
against the plaintiff the provisions of CFTC
Regulation 1.53, 17 C.F.R. § 1.53 (1977), and
from seeking to impose upon plaintiff any sanc-
tions for purported violations of that regula-
tion; and from further proceeding in the matter
known as CFTC Docket No. 77–14, In the Mat-
ter of New York Mercantile Exchange, now
pending before the Commission.

failed to state a claim upon which relief may be granted.

On September 14, 1977, I denied the Exchange's application for a temporary restraining order. On the bases set forth herein, I grant the Commission's motion to dismiss for failure by the Exchange to exhaust its administrative remedies. I do not reach the merits of the Exchange's application for a preliminary injunction.

The Exchange is a board of trade which has been designated as a "contract market" for trading in futures contracts under Section 5 of the Act[3]. The Commission is an independent agency of the United States created on October 23, 1974 to administer and enforce the Act, including those provisions applicable to the Exchange and other "contract markets".[4] The Commission is the successor to the Secretary of Agriculture and the Commodity Exchange Commission, which had previously been responsible for administration and enforcement of the Act.

In the proceeding sought to be enjoined, the Commission charges that the Exchange violated various provisions of the Act and the Commission regulations thereunder, in that the Exchange, with respect to futures contracts in potatoes, failed to use diligence to secure compliance by its own members with an Exchange rule,[5] and failed to take emergency action to prevent or eliminate market disruption.[6]

In 1974 the Act, originally enacted in 1922, was extensively amended. One thrust of the amendments, as noted, was to establish the Commission as the agency to administer and enforce the Act. Another thrust—which is at the heart of the problem before me—was to change those statutory provisions which pertain to approval by the administrative agency of the rules and regulations of designated contract markets.

Prior to the 1974 amendments, Section 5a(8) of the Act required the Exchange (and other designated contract markets) to enforce those of its own by-laws, rules, regulations and resolutions "which have not been disapproved by the Secretary of Agriculture . . ."[7] Under Section 5a(8) as amended, the Exchange is required to enforce all of its own by-laws, rules, regulations and resolutions "which have been approved by the Commission," and it is required to revoke and not enforce any of its own by-laws, rules, regulations or resolutions "which has been disapproved by the Commission."[8] Section 5a(12) of the Act as amended requires the Exchange to submit

---

3. 7 U.S.C. § 7 (Supp.1977).

4. Public Law 93–463, 88 Stat. 1389, amended the Act in various particulars.

5. The Commission charges violation of Section 5a(8) of the Act, 7 U.S.C. § 7a(8) and Regulations 1.51 and 1.53, 17 C.F.R. §§ 1.51 and 1.53 (1977), in that the Exchange failed to require compliance with Exchange Rule 44.02.

> On the final day of trading in the delivery month, it shall be the responsibility of each clearing member who is not in a position to fulfill his contractual obligation on any maturing contract by prescribed notice and tender, to have a liquidating order entered on the Exchange floor not later than five minutes before the time established as the official close for such delivery month. All such orders shall be market orders to be executed prior to the expiration of trading.

New York Mercantile Exchange Rule 44.02.

6. The Commission charges violation of Section 5(f) of the Act, 7 U.S.C. § 7(f) and Regulation 1.51, 17 C.F.R. § 1.51 (1977), and Section 5a(8) of the Act, 7 U.S.C. § 7a(8), and Regulations 1.51 and 1.53, 17 C.F.R. §§ 1.51 and 1.53 (1977).

7. Prior to the 1974 amendment, Section 5a(8) required each contract market to:

> enforce all bylaws, rules, regulations, and resolutions, made or issued by it or by the governing board thereof or any committee, which relate to terms and conditions in contracts of sale to be executed on or subject to the rules of such contract market or relate to other trading requirements, *and which have not been disapproved by the Secretary of Agriculture* pursuant to paragraph (7) of Section 8a of this Act; and revoke and not enforce any such bylaw, rule, regulation, or resolution, made, issued, or proposed by it or by the governing board thereof or any committee, which has been so disapproved . . . ." (emphasis added). 7 U.S.C. § 7a(8).

8. Section 5a(8) of the Act as amended requires each contract market to:

> enforce all bylaws, rules, regulations, and resolutions, made or issued by it or by the governing board thereof or any committee, which relate to terms and conditions in contracts of sale to be executed on or subject to the rules of such contract market or relate to

to the Commission for approval all of its rules relating to trading requirements and to the terms and conditions of contracts of sale.[9]

While the amendments to the Act became law on October 24, 1974, Section 5a(12) and the amendment to Section 5a(8) were effective 180 days thereafter, or on April 21, 1975. The Commission was authorized but not required to approve or modify the rules of the Exchange in the interim.[10]

Congress recognized that review by the Commission of contract market rules would take time. When delays occurred in the nomination and confirmation of members of the Commission, a law was enacted authorizing the Commission to defer, for a period not to exceed 90 days from April 21, 1975, the effective dates of certain of the amendments to the Act, including Section 5a(12) and the amendments to Section 5a(8).[11]

> other trading requirements, *and which have been approved by the Commission pursuant to paragraph (12) of this section [5a of this Act]*; and revoke and not enforce any such bylaw, rule, regulation, or resolution, made, issued, or proposed by it or by the governing board thereof or any committee, which has been disapproved by the Commission; . . . (emphasis added) 7 U.S.C. § 7a(8) (Supp. 1977).

9. Approval by the Commission is to be pursuant to Section 5a(12) of the Act, which requires that each contract market:

> except as otherwise provided in this subsection, submit to the Commission for its approval all bylaws, *rules, regulations, and resolutions* made or issued by such contract market, or by the governing board thereof or any committee thereof which relate to terms and conditions in contracts of sale to be executed on or subject to the rules of such contract market *or relate to other trading requirements* except those relating to the setting of levels of margin. The Commission shall approve, within thirty days of their receipt unless the Commission notifies the contract market of its inability to make such determination within such period of time, such bylaws, rules, regulations, and resolutions upon a determination that such bylaws, rules, regulations, and resolutions are not in violation of the provisions of this Act or the regulations of the Commission and thereafter the Commission shall disapprove, after appropriate notice and opportunity for hearing, any bylaw, rule, regulation, or resolution which the Commission finds at any time is in violation of the provisions of this Act or the

On April 18, 1975, the Commission announced in the Federal Register that it could not complete by April 21, 1975, the approval functions required of it by Section 5a(8) of the Act, as amended.[12] The notice stated that the Commission "believes that it will need at least the full 90 days" to complete its review function, and that it was exercising its authority [13] to defer the effective date of the amended Section 5a(8) until July 18, 1975. Apparently rule review under Sections 5a(8) and 5a(12) could not be accomplished with respect to existing Exchange rules and by-laws by July 18; and as of the initiation of this action before me, the Commission had not yet approved any Exchange regulations under Section 5a(8) as amended.

On July 17, 1975, the Commission promulgated Regulation 1.53.[14] That regulation

> regulations of the Commission. . . . 7 U.S.C. § 7a(12) (Supp.1977).

10. Act of October 23, 1974, Pub.L. No. 93–463, § 418, 88 Stat. 1389.

11. Public Law No. 94–16, 89 Stat. 77 (1975). Congress articulated its concern:

> There are certain things which the Commodity Futures Trading Commission cannot physically accomplish before April 21, 1975.
> The Commission cannot review the operations, bylaws, and rules of the currently unregulated commodity markets in sufficient depth to determine whether such markets should be designated as contract markets under the Act . . . . .
> \* \* \* \* \* \*
> It will not be possible for the Commission to approve all bylaws and rules of contract markets before April 21, 1975.
> \* \* \* \* \* \*
> It is, therefore, appropriate that the Commission be given additional time to complete its action on certain matters for which there are statutory deadlines.
> S.Rep.No.94–73. 94th Cong. 1st Sess. (1975), *reprinted* in [1975] U.S.Code Cong. & Admin. News 143, 144–45.

12. 40 Fed.Reg. 17409 (April 18, 1975).

13. Pursuant to Section 1(c) of Pub.L. No. 94–16, 89 Stat. 77 (1975).

14. 40 Fed.Reg. 30107, 30108 (July 17, 1975), *reprinted in* 17 C.F.R. § 1.53 (1977). In the

requires enforcement by the Exchange as a designated contract market, pending formal Commission review, of those Exchange by-laws, rules, regulations and resolutions in existence on July 18, 1975.

The Exchange challenges Regulation 1.53 as an illegal attempt by the Commission to impose by regulation an obligation Congress specifically eliminated in its amendments to the statute. Thus the Exchange characterizes Regulation 1.53 as "an administrative repeal of Section 5a(8) . . . in excess of the statutory jurisdiction and authority of the Commission." [15] The Supreme Court has held the doctrine of exhaustion of administrative remedies inapplicable to situations in which an agency's action was entirely outside its statutory jurisdiction. *Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). This forms the basis for the Exchange's assertion that exhaustion of administrative remedies is not required as a predicate for this action.

Before addressing the Exchange's challenge to the validity of Regulation 1.53, other facets of the statutory and regulatory scheme should be discussed.

Section 6(a) of the Act [16] provides that any board of trade applying for designation as a contract market shall accompany such application "with a showing that it complies with the conditions of Section 7 of this title, and with a sufficient assurance that it will continue to comply with the requirements of such Section 7. . . ." There is provision for revocation or suspension of a board of trade's designation upon a showing that it "is not enforcing or has not enforced its rules of government made a condition of its designation as set forth in section 7 of this title . . . ." [17]

Section 7 requires the Exchange, as a designated contract market, to undertake a continuing responsibility to provide "for the prevention of manipulation of prices and the cornering of any commodity by the dealers or operators upon such board"; [18] and to demonstrate "that transactions for future delivery in the commodity for which designation as a contract market is sought will not be contrary to the public interest." [19]

The Commission's Regulation 1.51 [20] (which was promulgated prior to the 1974 amendments to the Act) [21] prescribes a dual requirement. The Exchange as a contract market must: (1) secure compliance with all of the contract market's by-laws, rules, regulations, and resolutions which such contract market is required by the Act to enforce; and (2) use due diligence in maintaining a continuing affirmative action program to secure compliance with various provisions of the Act.[22]

---

preface to the release, the Commission opined that it already had authority to require enforcement of Exchange rules pending approval or disapproval by the Commission. However, for purposes of clarification and emphasis a specific regulation was being promulgated, 40 Fed. Reg. at 30108, n. 3 and accompanying text.

**15.** Brief for plaintiff at 7 (September 16, 1977).

**16.** 7 U.S.C. § 8 (Supp.1977).

**17.** 7 U.S.C. § 8(a) (Supp.1977).

**18.** Section 5(d), 7 U.S.C. § 7(d) (1976).

**19.** Section 5(g), 7 U.S.C. § 7(g) (Supp.1977).

**20.** 17 C.F.R. § 1.51 (1977).

**21.** Proposed Regulation 1.51 was published on July 11, 1973 for comments and written submissions on or before August 27, 1973, 38 Fed. Reg. 18469. Thereupon Regulation 1.51 was issued on October 23, 1973 with an effective date of December 1, 1973. 38 Fed.Reg. 29807 (October 29, 1973).

**22.** § 1.51 Contract Market Program for Enforcement.

(a) Each contract market shall use due diligence in maintaining a continuing affirmative action program to secure compliance with all of the provisions of Sections 5, 5a, 5b, 6(a), 6b, 8a(7), 8a(9), and 8c of the Act (7 U.S.C. 7, 7a, 7b, 8, 13a, 12a(7), 12a(9), and 12c) and with all of the contract market's bylaws, rules, regulations and resolutions which such contract market is required by the Act to enforce. Such program shall include:

(1) Surveillance of market activity for indication of possible congestion or other market situation conducive to possible price distortion;

(2) Surveillance of trading practices on the floor of such contract market;

(3) Examination of the books and records kept by the contract market members relat-

On July 18, 1975, the Exchange was designated by the Commission as a contract market for certain commodities, and at the same time notified that its prior designation for other commodities (which included Maine potatoes, at issue here) would be continued. The Commission expressed concern in its letter of designation that the "Exchange upgrade its rule enforcement program and maintain a staff adequate for carrying out that program"; it noted that it had adopted a rule requiring contract markets to enforce certain of their rules in effect on July 18, 1975; and it drew attention to the requirement under Sections 6(a) and (b) of the Act[23] that the Exchange "enforce rules made a condition of designation by the Act."[24]

The Commission is given broad powers to make regulations under the Act,[25] and is given specific authority to seek the court's assistance to enforce compliance with the Act and its regulations. It is also authorized to issue cease and desist orders if any contract market violates the Act or Commission regulations thereunder, and to assess civil penalties for such violations.

Even where a challenge to Commission action is predicated upon alleged constitutional violation, or upon action allegedly beyond the jurisdiction of the Commission, the statute itself provides for review of that action after the administrative course has been run. Thus the Act provides for appeal by a contract market to the Court of Appeals, which can modify or set aside a Commission order if it, *inter alia,* infringes the Constitution or is beyond the Commission's jurisdiction:

> No such order of the commission shall be modified or set aside by the court of appeals unless it is shown by the board of trade that the order is unsupported by the weight of the evidence or was issued without due notice and a reasonable opportunity having been afforded to such board of trade for hearing, or infringes the Constitution of the United States, or is beyond the jurisdiction of the Commission.[26]

The action the Exchange seeks to enjoin will entail a trial before an administrative law judge, at which the facts and the applicable law can be fully developed. The argument made before me as to the power of the Commission to enact Regulation 1.53 can be considered by him, not in isolation, but in the full context of the Exchange's responsibilities as a designated market under the Act and regulations.

I would readily agree that Section 5a(8) of the Act as amended does not require the

---

ing to their business of dealing in commodity futures and cash commodities, insofar as such business relates to their dealing on such contract markets;

(4) Investigation of complaints received from customers concerning the handling of their accounts or orders;

(5) Investigation of all other alleged or apparent violation of such bylaws, rules, regulations and resolutions;

(6) Such other surveillance, record examination and investigation as is necessary to enforce such bylaws, rules, regulations and resolutions; and

(7) A procedure which results in the taking of prompt, effective disciplinary action for any violation which is found to have been committed.

(b) Each contract market shall keep full, complete, and systematic records which will clearly set forth all action taken as a part of, and as a result of, its program required under paragraph (a) of this section.

**23.** 7 U.S.C. §§ 8 and 9 (Supp.1977), respectively.

**24.** *See* Plaintiff's Exhibits B and C, July 18, 1975 letter, and August 15, 1975 letter to Richard B. Levine, President of New York Mercantile Exchange from Commodities Futures Trading Commission. *See also* Plaintiff's Exhibit D, a telegram to Levine (August 18, 1975) confirming that approval of rules will not be completed but in any event enforcement would be required pending approval or disapproval.

**25.** Section 5 of the Act, 7 U.S.C. § 7 (1976) evidences the underlying policy considerations which precipitated federal presence in this area, and fully supports a broad interpretation of the powers accorded to the regulating agency. That section was enacted September 21, 1922 (c. 369, § 5, 42 Stat. 999, amended June 15, 1936, c. 545, § 2, 49 Stat. 1491) but has survived the amendments to the Act, and I do not question its continuing vitality.

**26.** Section 6(a) of the Act, 7 U.S.C. § 8(a) (Supp.1977).

Exchange to enforce its own rules and regulations if they have not yet been approved by the Commission. I note, however, that the Act does not prohibit the Commission from requiring designated markets to enforce those of the market's rules which have not yet been approved, and I should be loath indeed to hold on the record before me, as a matter of statutory interpretation or constitutional law, that the Commission does not have residual power, grounded in the Act itself and its rule-making authority under the Act, to require the Exchange to enforce such rules. Was the existence of those rules a factor in the designation or continuance of the Exchange as a contract market? Did the Exchange explicitly or implicitly agree to enforce those rules as a condition of designation? Did the failure of the Exchange to enforce those rules frustrate the regulatory intent of the Act? These questions have not been answered before me: they undoubtedly will be fully explored before the administrative law judge, who can also consider the constitutional questions raised in this action by the Exchange.

Attempts to enjoin administrative proceedings and obtain judicial relief before the prescribed administrative remedies have been exhausted are at odds with long settled rules of judicial administration. *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938); *SEC v. Andrews,* 88 F.2d 441 (2d Cir. 1937). The interplay between judicial tribunals and administrative tribunals requires that the vital functional differences between them be observed. *See generally, Federal Comm'n v. Broadcasting Co.,* 309 U.S. 134, 141–43, 60 S.Ct. 437, 84 L.Ed. 656 (1940). Thus except in the most extreme circumstances a court's equity jurisdiction may not be invoked to obtain premature judicial review of administrative action, and restraints upon, or interferences with, an agency's administrative proceedings are to be discouraged. *See e. g., Renegotiation*

*Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 20–25, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); *M. G. Davis & Co. v. Cohen,* 369 F.2d 360 (2d Cir. 1966); *International Waste Con., Inc. v. SEC,* 362 F.Supp. 117 (S.D.N.Y.), *aff'd.* 485 F.2d 1238 (2d Cir. 1973). In normal course courts should not exercise jurisdiction with respect to matters before an administrative agency until the administrative process has run its course—until, in short, administrative remedies have been exhausted. *See McKart v. United States,* 395 U.S. 185, 193–195, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

A few exceptions to the exhaustion doctrine have evolved. The Exchange correctly states that these exceptions pertain to those cases in which it is demonstrable that an agency has violated a constitutional right, has acted contrary to a specific statutory provision, or has so grossly exceeded its power as, in effect, to have flouted the will of Congress. *Leedom v. Kyne,* 358 U.S. 184, 188, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); *Public Utilities Comm'n of Ohio v. United Fuel Gas Co.,* 317 U.S. 456, 469, 63 S.Ct. 369, 87 L.Ed. 396 (1943); *M. G. Davis & Co. v. Cohen,* 369 F.2d 360, 363 (2d Cir. 1966). However, these exceptions have been restrictively applied. *See e. g., Boire v. Greyhound Corp.,* 376 U.S. 473, 479–81, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); *Brotherhood of Railway & Steamship Clerks, et al. v. Employees Assn.,* 380 U.S. 650, 659–660, 85 S.Ct. 1192, 14 L.Ed.2d 133 (1965).

Even in a *Leedom* situation, it would seem that first resort should be to the Commission. Congress has clearly evidenced its preference for record development at the agency level. There is nothing extraordinary that is presented by this case to persuade me that the normal administrative processes should be abandoned.[27]

In sum, the Exchange has not made a sufficient showing to take this case outside the general principle of administrative law that "no one is entitled to judicial relief for

---

**27.** On Saturday, September 17, 1977, a hearing was held at which the Exchange presented witnesses on the issue of irreparable injury. While I do not reach the merits on the Ex-

change's application for a preliminary injunction, I note that I did not in any event find the sum of the evidence sufficient to warrant extraordinary action.

a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). Even if Regulation 1.53 is invalid, a finding which I am not prepared to make, there does not appear to be a clear showing that the Commission has grossly exceeded its powers. The administrative process should be permitted to run its course. The Exchange will have ample opportunity to seek review in the Court of Appeals.

SO ORDERED.