**Valerie WESTHEIMER and Gerald Westheimer, Plaintiffs,**

v.

**COMMODITY EXCHANGE, INC., Defendant.**

**No. 86 CIV. 9807 (PKL).**

United States District Court, S.D. New York.

Jan. 13, 1987.

Power, Weiss & Marks, New York City, for plaintiffs; Arnold M. Weiss, of counsel.

Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant; Jerome S. Hirsch, of counsel.

LEISURE, District Judge:

Plaintiffs in this action sought a preliminary injunction pursuant to Fed.R.Civ.P. 65. After oral argument on January 8, 1987, and based in addition on the papers submitted by the parties, the Court denied plaintiffs' motion. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

### Findings of Fact

Defendant Commodity Exchange, Inc. ("COMEX") is a duly designated contract market, pursuant to the Commodity Exchange Act, as amended (the "CEA"), and serves as a large market for the trading of precious metals futures contracts and options. COMEX is a not-for-profit corporation organized under the laws of the State of New York with its principal place of business in New York City. COMEX consists of institutional and individual members. It is a private self-regulatory organization that has been charged with law enforcement responsibilities by federal statute and regulation. COMEX's members are prevented from receiving any portion of operating income that may be increased as a result of the imposition of fines.

Plaintiff Gerald Westheimer became a member of COMEX on June 19, 1968. Plaintiff Valerie Westheimer became a member of COMEX on July 27, 1984. The plaintiffs are married to each other.

During August 1984, an issue arose as to whether the gold option positions held by plaintiffs should be aggregated for the purposes of COMEX rules which limit the maximum number of contract positions in a particular commodity option that an individual or persons trading in common may hold. By letters dated August 27 and 29, 1984, an attorney who was then counsel for plaintiffs advised COMEX that the Westheimers' trading in futures and options was

in all respects independent. In reply to plaintiffs' request for COMEX's views as to whether their positions had to be aggregated, COMEX's general counsel stated that plaintiffs' marital affiliation would not itself require aggregation and that COMEX did not presently intend to pursue the matter, but that "if circumstances change," COMEX might inquire further to determine whether its rules had been violated.

On March 18 and 19, 1985, plaintiffs and James R. Paruch ("Mr. Paruch") were unable to meet margin calls of approximately $26 million on gold futures options by Volume Investors Corporation ("Volume Investors"), where each of them maintained accounts for the purpose of clearing trades executed on COMEX. These and other related events resulted in the financial collapse of Volume Investors. On March 20, 1985, the COMEX Board of Governors, believing there was sufficient evidence of violations of COMEX's rules, suspended plaintiffs' membership in COMEX, pending a hearing. Specifically, the Board of Governors charged that plaintiffs failed to meet members' minimum financial requirements and failed to adhere to reporting obligations with respect to reductions in net current assets. Plaintiffs' suspension remains in effect to date.

COMEX's compliance department conducted an investigation of plaintiffs' trading activity and recommended that the COMEX Committee on Business Conduct (the "business conduct committee") issue a complaint against plaintiffs and Mr. Paruch. The business conduct committee, which is made up of COMEX members, issued a complaint on June 30, 1986, containing six counts against plaintiffs. The committee charged that plaintiffs: exceeded COMEX limits on short call gold and silver options; controlled uncovered short gold call options and uncovered short silver call options; submitted false affidavits to COMEX; and failed to notify COMEX that they were unable to fulfill trading obligations, pay debts and meet obligations to other members or member firms of COMEX.

COMEX's Supervisory Committee is scheduled to hold a disciplinary hearing based on these charges against plaintiffs. The Supervisory Committee is also scheduled to address the charges for which plaintiffs were suspended by COMEX's Board of Governors. Under COMEX rules, the disciplinary hearing panel must be composed of not less than five members of the Supervisory Committee, at least one of whom must also be a member of the Board of Governors. COMEX rules state that no member may serve on the disciplinary hearing panel if he or a firm with which he is affiliated has a financial, personal or other direct interest in the matter under consideration. COMEX rules also provide parties to the hearing with the right to review the documentary evidence compiled against them, to appear in person, to call witnesses on their behalf, to cross-examine adverse witnesses, and to retain counsel to represent them.

After receiving all of the evidence, the disciplinary hearing panel must promptly deliver a written decision under COMEX rules and must set forth a summary of the evidence, a statement of findings and conclusions, and a declaration of any sanctions to be imposed. Upon an adverse decision, parties may request review by the Board of Governors, during which time the decision of the disciplinary panel may be stayed. The Board of Governors is required to issue a written decision of its findings and is empowered to order a new hearing. If a party is dissatisfied with the final determination by the Board of Governors, that party's appeal is to the CFTC. Upon reviewing an action of COMEX, the Commission may affirm, modify, set aside or remand the action. Judicial review may be sought after the CFTC has taken action.

In addition to the action taken by COMEX with regard to the collapse of Volume Investors and plaintiffs' alleged conduct, the Commodity Futures Trading Commission (the "CFTC") has also commenced proceedings relating in part to the events described above. The CFTC issued a complaint on August 27, 1985, which names as defendants, among others, COMEX and

plaintiffs. The complaint charges that CO-MEX violated the Commodity Exchange Act, as amended, by failing to take appropriate action to achieve compliance by plaintiffs with COMEX's rules limiting the number of contract positions in a particular commodity option that an individual or persons trading in common may hold. As to plaintiffs, the CFTC complaint charges that the Westheimers exceeded COMEX's limits on contract positions and, in turn, violated certain provisions of the CEA which refer to rules of contract markets, such as CO-MEX.

At the present time there is no date scheduled for the CFTC hearing. The CO-MEX disciplinary hearing was originally scheduled to be held on December 20, 1986. At the request of plaintiffs' co-respondent in that proceeding, Mr. Paruch, the hearing date was adjourned to January 14, 1987. At the time of oral argument on the instant motion, the hearing was scheduled for January 20 and 21, 1987. On January 9, 1987, counsel for defendant informed the Court by letter that the COMEX hearing had been adjourned until February 17, 1987, due to ongoing settlement discussions with Mr. Paruch.

Plaintiffs state in their verified complaint (the "Complaint") that COMEX's disciplinary procedure is inherently biased against them. Complaint ¶¶ 10–11. However, plaintiffs explain that the "primary reason" that COMEX "cannot provide plaintiffs with a fair, impartial and unbiased hearing" is the existence of the CFTC proceeding, in which COMEX is a co-defendant. Complaint ¶ 12. Plaintiffs state that, in an attempt to "preview" plaintiffs' case before the CFTC, "COMEX has sought to force a quick trial" of its own disciplinary hearing. Complaint ¶ 14. Plaintiffs also state that COMEX has brought its proceedings in a "dilatory" manner. Complaint ¶ 16.

### Conclusions of Law

■ 1. The doctrine of exhaustion of administrative remedies applies to the disciplinary proceedings of a private self-regulatory organization such as COMEX, which has been charged by federal statute and regulation with law enforcement responsibilities and which serves as an integral part of an overall enforcement scheme. *See, e.g., First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 696 (3rd Cir.1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980).

■ 2. The comprehensiveness of the procedure for review of a COMEX disciplinary hearing indicates a congressional intent that "self-regulation is the best 'first-line' defense against unethical or illegal" commodities practices, and application of the doctrine of exhaustion of administrative remedies prevents frustration of that intent. *See Id.* at 695 & n. 3, 698–99. *Accord Moyse v. New York Cotton Exchange*, 143 A.D. 265, 128 N.Y.S. 112, 114–15 (N.Y.App.Div.1911) ("member of such an association as the Cotton Exchange, against whom proceedings are instituted under its by-laws, must first exhaust his remedies within the association before he may invoke redress from the courts"); *Comenzo v. Mound*, No. 6440/84, slip. op. at 6 (N.Y.Sup.Ct. June 14, 1984) ("complaint is legally insufficient to state a cause of action since plaintiff has existing administrative remedies of which he has not yet availed himself, specifically the disciplinary hearing before the panel and an appeal to the Commission"). *See also Geraci, D.D.S. v. Eighth District Dental Society*, 51 A.D.2d 658, 378 N.Y.S.2d 191, 192 (N.Y.App.Div.1976); *Waco Financial, Inc. v. SEC*, [1981–82 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 98,220 (6th Cir.1981); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. National Association of Securities Dealers, Inc.*, 616 F.2d 1363, 1370 (5th Cir.1980). *Cf. Crimmins v. American Stock Exchange, Inc.*, 368 F.Supp. 270, 281 (S.D.N.Y.1973), *aff'd*, 503 F.2d 560 (2d Cir.1974) (court review of intra-professional disciplinary proceedings is not encouraged, "except, perhaps, in cases of clearly arbitrary or unjust professional determinations"); *New York Mercantile Exchange v. Commodity Futures Trading Commission*, 443 F.Supp. 326, 331 (S.D.N.Y.1977) ("ex-

cept in the most extreme circumstances a court's equity jurisdiction may not be invoked to obtain premature judicial review of administrative action, and restraints upon, or interferences with, an agency's administrative proceedings are to be discouraged").

3. The issue of the necessity of plaintiffs exhausting their administrative remedies does not turn on the question of whether COMEX is subject to the requirements of the due process clauses of the fifth and fourteenth amendments because exhaustion of administrative remedies does not involve only governmental action. *See Geraci*, 378 N.Y.S.2d at 192 (since members of professional society did not exhaust internal, administrative remedies "their action is premature as a matter of law"); *Waco Financial*, at ¶ 98,220 (petitioner seeks to stay NASD disciplinary process, but court holds the doctrine of exhaustion of administrative remedies applies); *Merrill Lynch*, 616 F.2d at 1370 (member of NASD must exhaust administrative remedies).

4. "Even in the case of offenses involving the penalty of expulsion from similar societies, actions have been maintained to enjoin such societies from denying the privileges of membership to a party expelled, only after action by the society expelling such member has been had. No case has been cited where an injunction has been granted in anticipation of such an event, and, we think, within settled rules, that suit in equity for such a purpose is not maintainable." *Thomas v. The Musical Mutual Protective Union*, 121 N.Y. 45, 57, 24 N.E. 24 (1890), *quoted in Moyse*, 128 N.Y.S. at 114.

5. The charge that the COMEX hearing panel is biased or is seeking to preview plaintiffs' CFTC case provides no grounds for departure from the application of the exhaustion of remedies rule. *See Touche Ross & Co. v. SEC*, 609 F.2d 570, 575 (2d Cir.1979) (until action demonstrating actual bias has been taken, administrative procedure should not be interrupted by judicial intervention); *Thomson & McKinnon v.*

*SEC*, 268 F.Supp. 11, 14 (S.D.N.Y.1967) (exceptions to exhaustion rule are narrow); *Peter Kiewit Sons' Co. v. United States Army Corps of Engineers*, 714 F.2d 163, 168–69 (D.C.Cir.1983) (exhaustion requirement may be dispensed with only where agency has " 'very clearly violated an important constitutional or statutory right' ") (citation omitted); *First Jersey Securities, Inc.*, 605 F.2d at 698–700 (principles underlying exhaustion doctrine are "particularly apt" when applied to a claim of structural or specific bias). *Cf. Sam Wong & Son, Inc. v. New York Mercantile Exchange*, 735 F.2d 653, 672 (2d Cir.1984) (since concept of exchange self-regulation requires boards of exchanges containing substantial number of persons with first-hand knowledge and sharing in important deliberations, a principle mandating disqualification due to potential but unlikely conflict of interest is inappropriate).

██ 6. "There is nothing extraordinary that is presented by this case to persuade [the Court] that the normal administrative process should be abandoned." *New York Mercantile Exchange*, 443 F.Supp. at 331. Plaintiffs have not established the extreme circumstances necessary to justify application of an exception to the exhaustion doctrine, such as an agency's clear violation of a constitutional right or specific statutory provision, or an agency's action in gross excess of its power. *See New York Mercantile Exchange*, 443 F.Supp. at 331; *Thomson & McKinnon*, 268 F.Supp. at 14. Plaintiffs have also failed to demonstrate that irreparable harm will result from their exhaustion of administrative remedies. *See First Jersey Securities, Inc.*, 605 F.2d at 696–97. Plaintiffs' claim that defendant is seeking to preview plaintiffs' case before the CFTC rests on "too tenuous a string of possibilities" to serve as a foundation for a finding of immediate irreparable harm. *See Crimmins v. American Stock Exchange, Inc.*, 346 F.Supp. 1256, 1262 (S.D.N.Y.1972).

7. Thus, the Court finds applicable the "general principle of administrative law that 'no one is entitled to judicial relief for

a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *Id.* 443 F.Supp. at 331–32 (quoting *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938)).  Plaintiffs' motion is denied.