BRUAN, GORDON & CO., Plaintiff,

v.

Kye HELLMERS, Raymond J. Arden, Peter Bulger, National Association of Securities Dealers, Inc. and District No. 12 of the National Association of Securities Dealers, Inc., Defendants.

No. 80 Civ. 4167 (CBM).

United States District Court,
S. D. New York.

Aug. 27, 1980.

On Motion for Reconsideration
Oct. 28, 1980.

4.  *Robinson v. Neil*, 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973).

Reavis & McGrath, Howard B. Sirota, New York City, for plaintiff.

Matthew Farley, Newark, N.J., Frank J. Wilson, Andrew McR. Barnes, T. Grant Callery, Washington, D.C., Shanley & Fisher, Newark, N.J., for defendants.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Three motions are presently before the court: 1) Plaintiff Bruan, Gordon & Co. ("Bruan, Gordon") has moved to remand this action to the Supreme Court of the State of New York, on the ground that the court lacks subject matter jurisdiction. 2) Defendants have moved for an order dismissing the complaint and/or granting summary judgment, on the grounds that plain-

tiff has failed to exhaust its administrative remedies and that defendants have immunity from liability. 3) Defendants have also moved for an order staying discovery until such time as the court rules on defendants' motion for summary judgment and/or dismissal.

Plaintiff's complaint in this action alleges the following facts and claims:

Plaintiff is a registered broker–dealer engaged in the securities brokerage business. Prior to the acts complained of, plaintiff was a member in good standing of defendant National Association of Securities Dealers, Inc. ("NASD"). NASD is a national securities association registered with the Securities Exchange Commission ("SEC") pursuant to Section 19 of the Securities Exchange Act of 1934 ("Exchange Act"). NASD is a self–regulatory organization comprised of securities broker–dealers registered under the Exchange Act for the purpose of regulating the conduct of broker–dealers in the over–the–counter market.

In its first cause of action, plaintiff alleges that defendants Kye Hellmers, Raymond J. Arden, and Peter Bulger (the "individual defendants"), officers of NASD, have engaged in a combination and conspiracy directed at plaintiff by wrongfully, intentionally, and maliciously interfering with plaintiff's business for their own personal benefit and gain. The alleged purpose of this agreement is to attempt to expand the jurisdiction of NASD beyond that authorized by law. In particular, plaintiff alleges that the individual defendants combined and conspired to do, among other things, the following acts in furtherance of their conspiracy: 1) By letter dated June 28, 1979, the individual defendants wrongfully ordered plaintiff to refrain from accepting any new security options customers, knowing that such a prohibition was not within the jurisdiction of NASD. 2) In July, 1979, the individual defendants wrongfully conducted a dragnet audit examination of plaintiff, in an attempt to gain revenge for plaintiff's pointing out that the prohibition of options trading was clearly beyond NASD's jurisdictional authority. 3) In February, 1980, the individual defendants wrongfully caused NASD to selectively and invidiously institute formal disciplinary proceedings against plaintiff.

In its second cause of action, plaintiff alleges that the individual defendants knew that NASD did not have jurisdiction to prohibit plaintiff from conducting options business, and that the individual defendants wrongfully, wilfully, intentionally, and maliciously interfered with plaintiff's business and customer relations.

In its third cause of action, plaintiff alleges that defendants wrongfully, wilfully, intentionally, and maliciously represented to plaintiff in writing that plaintiff was prohibited from conducting any transactions in options, and that defendants knew that this directive was false, misleading, and beyond defendants' legal jurisdiction.

Plaintiff seeks $250,000 in compensatory damages and $750,000 in punitive damages on each cause of action.

*Motion to Remand*

■ To warrant removal of an action from a state to a federal court on the ground that there exists a federal question, a controversy with respect to a federal question must be essential to plaintiff's cause of action and must be disclosed upon the face of the complaint. *Gully v. First National Bank*, 299 U.S. 109, 112, 112–13, 57 S.Ct. 96, 97, 97–98, 81 L.Ed. 70 (1936). It is not enough that a defense founded upon federal law is, or will be asserted. *Louisville & N.R. Co. v. Mottley*, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297 (1911). In the case at hand, plaintiff argues that its three causes of action–conspiracy, interference with business, and fraud–are common law causes of action which involve a directive by NASD outside the jurisdiction of NASD's own by–laws. Plaintiff argues that, accordingly, its complaint does not allege a violation of the Exchange Act, or even the NASD rules, and that removal was thus improper.

■ It is well–established that violation of NASD rules does not provide an

independent basis of liability, at least where suits by customers are involved. *Architectural League of New York v. Bartos*, 404 F.Supp. 304, 314 (S.D.N.Y.1975). A breach of NASD rules alone is simply a breach of a private association's rules and does not present a question which arises under the laws of the United States. *Lange v. H. Hentz Co.*, 418 F.Supp. 1376, 1380–81 (N.D. Tex.1976). While the Second Circuit has not addressed this jurisdictional issue, the Second Circuit has stated that a determination of whether a private right of action exists for violation of dealer association rules depends upon the nature of the particular rule and its place in the regulatory scheme. *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178, 182 (2d Cir. 1966), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966).

■ The critical issue in considering plaintiff's motion to remand, then, is whether a controversy with respect to the Exchange Act, as opposed to the NASD rules or by–laws, is essential to plaintiff's causes of action and are disclosed upon the face of the complaint. While the court must ascertain from the complaint whether federal law is a pivotal issue in the case, the lack of any reference to federal law in the complaint is not controlling. *North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233 (2d Cir.1978). Thus, further inquiry must be made as to whether, regardless of artful pleading, in fact the action is one governed by federal law. *State of New York v. Local 144*, 410 F.Supp. 225, 226 (S.D.N.Y.1976); *see Coditron Corp. v. AFA Protective Systems, Inc.*, 392 F.Supp. 158, 160 (S.D.N.Y.1975); *Hearst Corp. v. Shopping Center Network*, 307 F.Supp. 551, 556 (S.D.N.Y.1969). Moreover, the nature of plaintiff's claim must be evaluated on the basis of the record as it stands at the time the petition for removal is filed. *Westmoreland Hospital Ass'n v. Blue Cross of Western Pennsylvania*, 605 F.2d 119, 123 (3d Cir.), *cert. denied*, 444 U.S. 1077, 100 S.Ct. 1025, 62 L.Ed.2d 759 (1980). Although certain allegations may be unnecessary for the ultimate disposition of the case, surplusage of federal claims is not the test. *Id.* Accordingly, federal jurisdiction is proper where a complaint is based in part on federal statutes or federal legal principles. *Id.* at 124. In the case at hand, plaintiff's complaint discloses a federal question involving the federal statutory authority of NASD. The complaint alleges that defendants attempted to expand the jurisdiction of NASD "beyond that authorized by law," that defendants' action was "clearly beyond the NASD's jurisdictional authority," and that NASD's directive was "beyond defendants' legal jurisdiction." While the complaint lacks specific references to NASD's jurisdictional authority under federal securities law, it is clear that the complaint's references to NASD's legal jurisdiction and jurisdiction "authorized by law" are inartful attempts to disguise reliance upon federal securities law. Obviously, any determination by a court as to whether NASD exceeded its legal jurisdiction necessarily involves a federal question controversy with respect to NASD's proper jurisdiction under federal securities law. Thus, at least upon the face of the complaint, federal law is a pivotal issue in the case. Plaintiff's argument that the complaint was intended to allege only a violation of NASD's by–laws is without merit. Having alleged in its complaint that defendants exceeded NASD's legal jurisdiction, plaintiff cannot avoid removal by belatedly arguing that it intended to refer to jurisdiction under NASD's by–laws rather than jurisdiction under federal securities law. While plaintiff's future litigation strategy may not involve disposition of issues involving federal securities law, plaintiff's complaint is based in part on federal securities law, in at best a thinly veiled disguise.

■ In addition to federal question jurisdiction pursuant to 28 U.S.C. § 1331, the court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1442(a)(1). Section 1442(a)(1) provides that an action may be removed to federal court if it is an action against "[a]ny officer of the United States or any agency thereof or person acting under him, for any act

under color of law." With respect to disciplinary proceedings, NASD should be considered as a "person" acting under the SEC. In an analogous situation, this court has held that the New York Stock Exchange may be considered an agent or arm of the SEC with respect to the discipline of persons. *Trama v. New York Stock Exchange*, [1979 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,748, at 94,919 (S.D.N.Y.1978). While NASD is not a federal officer or agency for other purposes, such as triggering the privilege against self–incrimination, NASD is a "person" acting under the SEC in connection with disciplinary proceeding, for purposes of determining jurisdiction under Section 1442(a)(1). Accordingly, the court has subject matter jurisdiction in the present action, as plaintiff's complaint alleges that the individual defendants wrongfully, wilfully, intentionally and maliciously caused NASD to institute formal disciplinary proceedings against plaintiff as part of a conspiracy by the individual defendants. Thus, insofar as plaintiff's complaint alleges that the individual defendants improperly caused NASD to institute disciplinary proceedings, plaintiff's complaint involves an action against a person acting under the SEC for acts "under the color of law." While plaintiff now argues that the gravamen of its complaint is the June 28, 1979, letter, the fact remains that the NASD disciplinary proceeding is an integral part of plaintiff's complaint, thus affording subject matter jurisdiction over this action.

In summary, plaintiff's motion to remand this action to state court must be denied on the ground that the court has subject matter jurisdiction pursuant to both 28 U.S.C. § 1331 and 28 U.S.C. § 1442(a)(1).

*Motion for Dismissal and/or Summary Judgment*

Defendants have moved for dismissal and/or summary judgment on the grounds that plaintiff has failed to exhaust its administrative remedies and that defendants have immunity from liability. For the reasons set forth below, defendants' motion must be denied on the ground that there are genuine issues as to material facts.

■ With respect to plaintiff's alleged failure *to* exhaust its administrative remedies, it is well–established that the doctrine of exhaustion of administrative remedies applies with equal force to the disciplinary proceedings of NASD. *First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *accord, Merrill Lynch, Pierce, Fenner & Smith, Inc. v. National Association of Securities Dealers, Inc.*, 616 F.2d 1363, 1370 (5th Cir. 1980). However, while the exhaustion doctrine would normally apply to NASD disciplinary proceedings, extraordinary circumstances may compel a court to hear a case. *First Jersey Securities, Inc. v. Bergen, supra*, 605 F.2d at 696. For example, a narrow exception to the exhaustion doctrine exists in situations where plaintiffs allege that an agency is acting "plainly beyond its jurisdiction." *Touche Ross & Co. v. SEC*, 609 F.2d 570, 574–76 (2d Cir. 1979).

Applying these principles to the case at hand, it is readily apparent that there are genuine issues as to material facts. First, there is a genuine issue as to whether there exist administrative remedies within NASD or the SEC whereby plaintiff could obtain any redress for the alleged order in the June 28, 1979, letter and the subsequent audit examination. Second, there is a genuine issue as to whether NASD was acting "plainly beyond its jurisdiction," as alleged by plaintiff. Defendants vigorously dispute plaintiff's version of the facts–a version which would appear to show that NASD was acting "plainly beyond its jurisdiction" and which would appear to bring this case within the narrow exception to the exhaustion doctrine. Given these genuine issues as to material facts, it cannot be said that defendants are entitled to judgment as a matter of law on the ground that plaintiff has failed to exhaust its administrative remedies.

■ With respect to defendants' alleged immunity from liability, defendants enjoy a qualified immunity *in connection with their* conduct of disciplinary proceedings against plaintiff. *See Trama v. New York Stock*

*Exchange, supra,* [1979 Transfer Binder] Fed.Sec.L.Rep. (CCH) at 94,919. Under this qualified immunity, a defendant would be liable for damages only if "he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the [plaintiff]." *Id.* at 94,919–20 (quoting *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975)). The court has also suggested in dictum that under certain circumstances an absolute immunity might be granted to those officials involved in the adjudicatory process of an agency or stock exchange. *Id.* at 94,920.

■ Applying these principles to the case at hand, it is readily apparent that there are genuine issues as to material facts and that defendants are not entitled to judgment as a matter of law. The qualified privilege established in *Trama* applies only to the conduct of disciplinary proceeding by NASD or similarly situated associations and stock exchanges; the court has never suggested that NASD would enjoy a qualified privilege with respect to all of its activities. Even assuming arguendo that NASD enjoys a qualified privilege which is not restricted to disciplinary proceedings, there is a genuine issue of material fact as to whether defendants acted with malicious intent in the case at hand. The court need not decide today whether NASD officials performing adjudicative functions enjoy an absolute immunity. Plaintiff's complaint alleges that defendants engaged in several actions in furtherance of their alleged conspiracy–only one of the these actions directly involved the performance of adjudicatory functions by defendants. The other two alleged actions, the alleged order contained in the June 28, 1979, letter and the subsequent audit examination, cannot be considered as adjudicatory actions by NASD. Accordingly, even assuming arguendo that the absolute immunity enjoyed by federal executive officials involved in adjudication applied to NASD officials, that absolute immunity would not provide defendants from liability for the non–adjudicatory actions in the case at hand.

■ Finally, defendants argue that they are immune from liability under the doctrine of *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), which clothes the official acts of an executive officer with immunity from civil defamation suits. While the court is willing to characterize NASD as an agent or arm of the SEC with respect to the conduct of disciplinary proceedings, the court is unwilling to afford *Barr v. Matteo* the expansive reading suggested by defendants. The court does not view *Barr v. Matteo* as allowing NASD absolute immunity for all its actions–such a sweeping holding would be unprecedented. The fact that NASD may be considered an arm or agent of the SEC with respect to disciplinary proceedings certainly does not transform officials of NASD into federal executive officers. Moreover, in the case at hand defendants appear to have waived any immunity they might enjoy for intentional torts. Article I, Section 4(a)(3) of the NASD by–laws provides that NASD shall not be liable *except* for wilful malfeasance by an officer while acting within the scope of his employment. While defendants disavow any construction of this provision as a waiver of immunity, at best there remains a genuine issue of material fact as to the proper application of this provision and whether NASD has agreed that it and its officers may be held civilly liable for intentional torts.

In summary, defendants' motion for dismissal and/or summary judgment must be denied on the ground that there are genuine issues of material fact and that defendants are not entitled to judgment as a matter of law. The court has discussed several, but not necessarily all, of the disputed issues of fact above.

*Conclusion*

For the reasons stated above, both plaintiff's motion to remand and defendants' motion for dismissal and/or summary judgment are denied. As there has been no

discovery in this action pending the court's disposition of these motions, defendants' motion for a stay of discovery is now moot.

So ordered.

### On Motion For Reconsideration

MOTLEY, District Judge.

On August 27, 1980, this court filed a memorandum opinion disposing of various pending motions in this case. Defendants have moved for reconsideration of the portion of the opinion denying defendants' motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b) for plaintiff's failure to exhaust administrative remedies. In the alternative, defendants request that this issue be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). These motions were heard on September 26, 1980. At that hearing the Securities and Exchange Commission (SEC) requested leave to appear *amicus curiae* in support of defendants' motion. Leave was granted, whereupon the SEC addressed the merits and subsequently filed papers. Plaintiff was given leave to file a reply and did so. On reconsideration and for the reasons stated below, defendants' motion is granted, and the complaint is dismissed. Although the pertinent facts were stated previously in this court's decision of August 27, 1980, a brief description of the parties and plaintiff's complaint follows to aid in understanding the court's disposition of the instant motion.

Plaintiff, Bruan Gordon & Co. (Bruan), is a registered broker-dealer. Prior to the acts complained of, plaintiff was a member in good standing of defendant, the National Association of Securities Dealers, Inc. (NASD). Defendant is a self-regulatory organization (SRO) registered with the SEC as a national securities association pursuant to Section 19 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.* (Exchange Act). NASD serves as the SRO for the over-the-counter securities market. The individual defendants, Kye Hellmers, Raymond J. Arden, and Peter Bulger (the individual defendants) are officers of the NASD.

Plaintiff's complaint contains three causes of action. The first alleges a conspiracy by the individual defendants to "expand the jurisdiction of defendants NASD and District No. 12 over its member constituents beyond that authorized by law" in order to "elevate themselves in esteem and position within the ranks of the NASD and District No. 12." *Complaint,* ¶ 9. Three overt acts are alleged to have taken place in furtherance of this conspiracy. First, it is alleged that plaintiff was "ordered" by letter dated June 28, 1979, and signed by defendant Hellmers, to suspend all of its options business, both over-the-counter and on the American Stock Exchange (AMEX), pending the qualification of a new registered options principal (ROP) pursuant to Article I, Section 2(d), Schedule C of the NASD's rules. *Complaint,* ¶ 10(a). This action allegedly exceeds the NASD's jurisdiction since the NASD's authority is allegedly limited to regulating the over-the-counter market. Second, the complaint alleges that the NASD carried out a "dragnet" audit of plaintiff's books and records in July, 1979, in an effort to interfere with plaintiff's business and to "concoct any possible violation of rules by Bruan." *Complaint,* ¶ 10(b). Finally, NASD's institution of formal disciplinary proceedings against plaintiff for alleged violation of NASD's "free riding" rules is alleged to be improperly selective prosecution resulting from a desire to injure Bruan. *Complaint,* ¶ 10(c). All three overt acts were allegedly conducted "wrongfully, wilfully, intentionally and maliciously."

Plaintiff's second cause of action constitutes an allegation of tortious interference with business relationships arising out of the same overt acts previously described. The third cause of action alleges fraud in connection with the letter to plaintiff of June 28, 1979, stating that plaintiff was prohibited from conducting all new options trading pending qualification of a new ROP.

Determination of the instant motion to dismiss must begin by examining the relationship between the exhaustion doctrine and the NASD. The exhaustion doc-

trine is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). Requiring litigants to exhaust their administrative remedies avoids "premature interruption of the administrative process" and insures that the administrative agency involved has an opportunity to apply its expertise and correct its own errors. *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969); *Parisi v. Davidson*, 405 U.S. 34, 37, 92 S.Ct. 815, 817, 31 L.Ed.2d 17 (1972).

■ It is not immediately obvious that the exhaustion doctrine applies to NASD, a private corporation. However, at least two Circuits have directly confronted this question and applied the exhaustion doctrine to NASD. *See First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 695 (3d Cir. 1979) (*First Jersey Securities*); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. National Association of Securities Dealers, Inc.*, 616 F.2d 1363, 1369 (5th Cir. 1980)(*Merrill Lynch*). Each case utilizes a similar analysis in deciding to require exhaustion of administrative remedies in NASD proceedings. Essentially, both courts conclude that NASD's status as a registered national securities association pursuant to specific statutory authorization requires NASD to perform many of the same functions as a public administrative agency. *See* 15 U.S.C. § 78o–3; *First Jersey Securities, Inc. v. Bergen*, 605 F.2d at 696; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. National Association of Securities Dealers, Inc.*, 616 F.2d at 1367. In fact, "[a]s a registered securities association, it has been 'delegated governmental power in order to enforce . . . compliance by members of the industry with both the legal requirements laid down in the Exchange Act and ethical Standards going beyond those requirements.'" *Merrill Lynch, Pierce, Fenner & Smith v. National Association of Securities Dealers*, 616 F.2d at 1367 (*Quoting*, S.Rep.No.94–75, 94th Cong., 1st Sess. 23 (1975), U.S.Code Cong. & Admin.News 1975, pp. 179, 201). This supervisory responsibility is exercised subject to "a comprehensive review procedure" which provide for appeal of NASD's determinations to the SEC and ultimately to a United States Court of Appeals. *First Jersey Securities, Inc. v. Bergen*, 605 F.2d at 696. The quasi-official status of NASD therefore fully activates the policies underlying the exhaustion doctrine and requires the doctrine's application to NASD.

Since exhaustion of administrative remedies does apply in the instant case, this court must determine the formulation of the doctrine accepted in this Circuit. That formulation may be found in a recent decision affirming this Court's dismissal of a complaint against the SEC for failure to exhaust administrative remedies. *Touche Ross & Co. v. Securities and Exchange Commission*, 609 F.2d 570 (2d Cir. 1979) (*Touche Ross*). *Touche Ross* involved an action for declaratory and injunctive relief to stop an ongoing administrative proceeding which had been instituted against Touche Ross & Company by the SEC. Touche Ross contended that the SEC Rule 2(e) which Touche Ross & Company was accused of violating had been promulgated without statutory authority and thus the SEC was acting without jurisdiction. It also was argued that the proceedings before the SEC were "biased" and were not in accordance with due process. 609 F.2d at 575.

In affirming this court's dismissal of the action for failure to exhaust administrative remedies, however, the Second Circuit went further and decided the question whether the SEC had exceeded its authority in enacting Rule 2(e). In so doing, the Second Circuit served notice "that normally we will not tolerate the interruption of the administrative process to hear piecemeal appeals of a litigant's claims on the merits." 609 F.2d at 574. Touche Ross & Company's claim that the SEC proceedings in question were biased was first disposed of in a manner highly relevant to the instant motion. The Court stated:

If the claim of bias were the only basis for appellants' demand for injunctive relief, it would be unnecessary for us to go further then to hold, with respect to that claim, that exhaustion of administrative remedies is required. As the Court of Appeals for the District of Columbia Circuit has held, allegations of agency bias or prejudgment based on ex parte communications are insufficient for injunctive relief and cannot be reviewed until the agency has made an adverse determination and an appeal has been taken raising these claims on the record as a whole.... *We agree. Until the Commission has acted and actual bias has been demonstrated, the orderly administrative procedures of the agency should not be interrupted by judicial intervention.* 609 F.2d at 575. (Citations omitted.)

■ The argument that agency bias should serve as one of the exceptions to the exhaustion requirement was thus clearly presented to the Second Circuit in *Touche Ross*. The passage just quoted must therefore be read as a portion of the holding in that case and is, accordingly, binding on this court. As a result, paragraph 10(c) of plaintiff's complaint alleging agency bias must be dismissed. Paragraph 10(c), as previously mentioned, alleges that a disciplinary proceeding begun against plaintiff by defendants was improperly motivated and constituted an overt act in furtherance of the conspiracy alleged in the complaint. The above quoted passage makes clear that a federal district court in the Circuit may not assert its jurisdiction to try such an allegation. The agency involved must be allowed to speak in the first instance.

The *Touche Ross* decision then considered what circumstances might create an exception to the exhaustion doctrine. Close reading of the decision indicates that the Second Circuit recognizes only a single narrow exception to the exhaustion requirement in the event the agency action complained of "is plainly beyond [the agency's] jurisdiction as a matter of law or is being conducted in a manner that cannot result in a valid order." 609 F.2d at 576 (*Quoting, Sterling Drug, Inc. v. Weinberger,* 509 F.2d 1236, 1239 (2d Cir. 1975) (Friendly, J.)). Applying this formulation of the exhaustion doctrine to the instant case requires that paragraph 10(b) of plaintiff's complaint must also be dismissed.

■ Paragraph 10(b) of the complaint characterizes an audit of plaintiff conducted by NASD in July, 1979, as a "dragnet" operation allegedly motivated by a desire to "gain revenge" against plaintiff. At no point does plaintiff contend that the NASD lacks authority to conduct such an audit. In fact, plaintiff does not deny defendants' assertion that all of the NASD's members are subject to similar audits in the normal course of the NASD's self-regulatory efforts. Plaintiff only complains of the manner in which the audit was conducted. Plaintiff does not allege that the audit exceeds NASD's jurisdiction. It appears on the fact of the complaint that the audit complained of resulted in the disciplinary proceeding just mentioned. The disciplinary proceeding provides an obvious administrative forum for plaintiff to press its contention that the audit was improperly conducted. If the audit was conducted in a biased fashion, then plaintiff must demonstrate that bias by initially pressing its complaint before the NASD. *See, First Jersey Securities v. Bergen,* 605 F.2d 690 (3d Cir. 1979); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. National Association of Securities Dealers, Inc.,* 616 F.2d 1363 (5th Cir. 1980).

■ The remaining portions of the complaint ultimately depend upon an allegation that the NASD and certain of its named officers willfully engaged in an *ultra vires* act by ordering plaintiff to refrain from accepting any new security options customers, pending qualification of a new ROP. Plaintiff contends that this "order" was intended to prevent all further options trading, whether it was over-the-counter or on the American Stock Exchange (AMEX). Plaintiff alleges that such action was beyond NASD's jurisdiction in so far as it purported to restrict plaintiff's dealings on

AMEX. Defendants sharply disagree with plaintiff's version of their actions. According to defendants, the June 28, 1979, letter in question cannot be read as "ordering" plaintiff to do anything. In addition, defendants contend that even if the letter can be treated as an "order" it does not, by its own terms, apply to plaintiff's AMEX trading. In this connection it must be noted that plaintiff's own general counsel filed an affidavit in opposition to defendants' original motions for dismissal and/or summary judgment, now under reconsideration in part, in which he says the following:

> In any event, it was not until early June 1980 that plaintiff confirmed, what we had originally believed and strenuously argued, that defendant Hellmers' position that the subject NASD By-Laws prohibited an NASD member from effecting *all* options transactions, including transactions in AMEX listed options, without an ROP was, in fact, squarely against the NASD's own internal and published interpretation, with which defendant Hellmers must have been familiar as the self-described NASD options "Specialist." At that time plaintiff received NASD Notice to Members 80–22, dated June 4, 1980, a copy of which is annexed hereto as Exhibit "E", announcing the Commission's approval of numerous option rule changes submitted by the NASD in response to recommendations of the Commission Special Study of the Options Market. As will be clear to the Court, this release confirms what we always believed and what we have told Mr. Hellmers, that the NASD option rules only apply to options business effected on an "access" basis. As it turns out, the June 4, 1980 NASD release only repeats the November 15, 1978 NASD release notifying the public of the Commission's approval of the initial NASD "access" rules which defendants now have the hardihood to produce was an exhibit to the moving affidavit of John E. Pinto, Jr., Vice President in Charge of the NASD's Surveillance Department, in support of their hindsight claim that the Hellmers directive only "intended" to apply to "access" transactions.[1]

The above description of the controversy surrounding the NASD's alleged proscription of plaintiff's AMEX options trading is in itself eloquent testimony in favor of the exhaustion requirement. If plaintiff had utilized the administrative mechanisms open to it in June, 1979, this court would not now be confronted with the task of trying to determine on these motions what, if any, action was taken by NASD and the individual defendants in June, 1979 and the meaning or parameters of such action. It appears from the affidavit of plaintiff's general counsel, Mark B. Borteck, that plaintiff waited until June, 1980, to "confirm" that the alleged "order" to cease options trading was, in fact, not authorized by NASD's own interpretation of its rules. *Borteck Affidavit* at ¶ 22. This confirmation allegedly resulted from receipt by plaintiff of a NASD Notice to Members relating to options trading. *Id.* Read another way, this affidavit means that plaintiff did absolutely nothing about the alleged options "order" for almost a year. If this court were to try this case on these facts, it would encourage exactly the sort of premature review of administrative agency action which the exhaustion doctrine is designed to prevent. *See McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969).

This court's present decision with respect to the June 28, 1979, letter results, in part, from its conclusion that administrative rem-

---

1. The analysis which follows is based not only on the allegations in plaintiff's pleadings but also factual statements contained in various affidavits submitted by plaintiff in opposition to the motion. Defendants' original motion to dismiss refers only to Rule 12(b) of the Federal Rules of Civil Procedure. The court assumes, given the grounds for the dismissal motion, that defendant meant Fed.R.Civ.P. 12(b)(1), which refers to a defense based upon alleged "lack of jurisdiction over the subject matter." To the extent that affidavits before the court contain facts relevant to a motion pursuant to Rule 12(b)(1), they constitute "jurisdictional facts" to which the court may properly refer when deciding a motion to dismiss. *See Green v. Forney Engineering Co.*, 589 F.2d 243 (5th Cir. 1979); 2A *Moore's Federal Practice* ' 12.14 at 2336, n.8–10 (and case cited there in).

edies did in fact exist when the letter was received. The SEC's memorandum, submitted *amicus curiae*, points out that "[t]he self-regulatory organizations exercise authority subject to SEC oversight and have no authority to regulate independent of the SEC's control." *Report of the Sen. Comm. on Banking, Housing and Urban Affairs to Accompany S. 249*, S.Rep.No.94–75, 94th Cong., 1st Sess. 23 (1975), U.S.Code Cong. & Admin.News 1975, p. 201. Plaintiff could have complained directly to the SEC about the letter of June 27, 1980. The SEC has statutory authority to bring an injunctive action in federal district court against any SRO. *See* Section 21(d) of the Securities Exchange Act of 1934 (Exchange Act), 15 U.S.C. 78u(d). The SEC may also commence its own administrative proceedings against an SRO "to censure or impose limitations upon the activities, functions and operations of self-regulatory organizations." Section 19(h) of the Exchange Act, 15 U.S.C. 78s(h).

Plaintiff argues that these sections of the Exchange Act are discretionary with the SEC and, therefore, do not provide an adequate administrative remedy to activate the exhaustion requirement. Plaintiff's argument turns the exhaustion requirement on its head. The way to demonstrate that a remedy is inadequate is to exhaust it or point to prior demonstrated inadequacies. Plaintiff's report to the SEC would have demonstrated either that no remedy existed or it would have enabled the SEC to investigate what the June 28, 1979, letter actually meant. That determination would either have solved the problem, or at least avoided the necessity of asking a federal court to make determinations better made by the experienced administrative agency in the field.

█ Plaintiff may not avail itself of the narrow exception to the exhaustion requirement enunciated in *Touche Ross*. The Second Circuit's standard, set forth above, requires that the agency action complained of must be "plainly beyond its jurisdiction as a matter of law." 609 F.2d at 576. Such a conclusion is not possible on the record before this court. It is unclear whether the June 28, 1979, letter, in fact, constituted agency action, if it did, it is unclear what action was taken. Simply alleging action beyond jurisdictional limits is insufficient. *See First Jersey, supra*, 605 F.2d at 697; *Merrill Lynch, supra*, 616 F.2d at 1371. Plaintiff does not deny that defendants possessed the authority to prohibit over-the-counter options trading if the NASD's by-laws were violated. That may have been all the June 28, 1979, letter was intended to do. We cannot be sure, however, because plaintiff made no attempt to settle the matter administratively.

One final point must be made. This court adheres to the portion of its August 27, 1980, opinion denying defendant's motion for summary judgment on the grounds of absolute sovereign immunity. Therefore, this dismissal is without prejudice in so far as the complaint alleged actionable conduct on the part of the individual defendants in connection with the alleged prohibition of options trading. This dismissal is not intended to bar a subsequent suit for damages if, after administrative proceedings to determine the facts surrounding the June 28, 1979, letter, plaintiff still feels that individuals abused their official position in a tortious fashion.

For the reasons expressed above, the complaint is dismissed in its entirety.