**McLAUGHLIN, PIVEN, VOGEL, INC., Plaintiff,**

v.

**NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., Defendant.**

**No. 89 Civ. 3343 (MBM).**

United States District Court, S.D. New York.

March 21, 1990.

Joseph D'Elia, Huntington, N.Y., for plaintiff.

John J. Flood, Asst. Gen. Counsel, NASD, Inc., Washington, D.C., for defendant.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff McLaughlin, Piven, Vogel, Inc. ("MPV"), a Delaware corporation which engages in over-the-counter securities transactions, sues for equitable relief against defendant National Association of Securities Dealers, Inc. ("NASD"), a nonprofit organization created by the Securities and Exchange Commission to supervise the over-the-counter securities market. NASD is a self-regulating body incorporated in Delaware with its principal place of business in Washington, D.C. Its members are registered brokers and dealers who transact investment banking and securities business. Plaintiff asserts that as a member of NASD, it has the right to inspect books and records pertaining to an NASD investigation of MPV's activities. Plaintiff disputes NASD's right to investigate its members without disclosing the details and results of such investigations. Defendant moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), and 12(h)(3), or for summary judgment pursuant to Fed.R.Civ.P. 56(b). For the reasons set forth below, defendant's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) is granted.

### I.

MPV issued an advertising mailer on August 24, 1987 which advised clients not to rely on over-the-counter dealers unless they were also members of the New York Stock Exchange. (Amended Complaint Exh. A) NASD District 12, located in New York City, commenced an investigation of the mailer. (Eib Aff. ¶ 2) In a letter dated September 14, 1987, Anthony DelRe, Associate Examiner of NASD District 12, forwarded it to the Director of NASD Advertising Department, R. Clark Hooper. (Hooper Aff. ¶ 2) Hooper sent a letter to MPV on September 28, 1987, stating that the advertising mailer did not comply with NASD Rules of Fair Practice. (Hooper Aff. ¶ 3)

On October 7, 1987, DelRe wrote to Allan Vogel, Senior Vice President at MPV, that the mailer contained exaggerated, unwarranted and misleading statements. (Eib Aff. Exh. 4) MPV corresponded with District 12 about NASD's objections to the mailer. (English Aff. Exh. B and C; Eib Aff. Exh. 1 and 2) In a letter dated January 22, 1988, Louis Eib, NASD District 12 Supervisor, wrote to Thomas English, MPV Vice President, informing him that the mailer had been presented to a subcommittee of the District 12 Business Conduct Committee. That subcommittee directed the

staff to begin a formal action against MPV if it continued to send the mailer to customers. (Eib Aff. ¶¶ 4–5 and Exh. 1, English Aff. Exh. B)

The NASD January 22, 1988 letter to MPV enclosed copies of the documents which had been presented to the subcommittee. (Eib Aff. ¶ 5 and Exh. 1) The letter also asked MPV to examine its policies and procedures and to inform the district office of its actions to insure future compliance with the NASD Rules of Fair Practice. (Eib Aff. ¶ 5 and Exh. 1) On February 12, 1988, English met with William S. Clendenin, Director of NASD District 12, to discuss the mailer and NASD's other concerns. (English Aff. Exh. B) On February 17, 1988, English wrote to Clendenin acknowledging that "... we understand your concerns about the text that accompanied our mailer ... the text as stated in that mailer will not be used in the future." (English Aff. Exh. B)

On October 24, 1988, English wrote to Eib at NASD's New York office, requesting that Eib furnish MPV with a list of its ex-employees who continued to complain to NASD. (Eib Aff. ¶ 6 and Exh. 3, Flood Aff. Exh. 4) The letter did not request any other information or documents. *Id.* By letter dated November 3, 1988, Eib refused to supply any documents to English and responded that it is NASD policy to "treat these matters with strict confidentiality." (Eib Aff. Exh. 3, English Aff. Exh. C, Flood Aff. ¶ 4 and Exh. 3) Other than the request for a list of MPV ex-employees, MPV made no other written demands of defendant before litigation. (Eib Aff. ¶ 7, Nellius Aff. ¶ 5, Flood Aff. ¶ 6)

On March 9, 1989, MPV served defendant with a petition to compel NASD to give plaintiff immediate access to books and records pertaining to the NASD investigation of plaintiff's operations as a registered broker/dealer. Plaintiff's purpose was to uncover the NASD examiners' conclusions and the identity of confidential informants who complained to NASD about plaintiff's activities. (Amended Complaint ¶ 13) Plaintiff voluntarily dismissed the petition without prejudice on May 15, 1989,

pursuant to Fed.R.Civ.P. 41, and then filed the complaint in this matter, stating nearly identical allegations.

II.

Defendant has moved to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) because plaintiff has failed to exhaust administrative remedies before seeking judicial review of NASD's alleged refusal to permit inspection of investigative documents. "The court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Alabama Insurance Guaranty Association*, 896 F.2d 674, 678 (2d Cir.1990), *quoting* 5 C. Wright and A. Miller, *Federal Practice and Procedure*, § 1350, p. 548 (1969).

■ No one is entitled to judicial relief for a supposed or threatened injury until a prescribed administrative remedy has been exhausted. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938), *cited in Bruan, Gordon & Co. v. Hellmers*, 502 F.Supp. 897 (S.D.N.Y.1980). Requiring litigants to exhaust their administrative remedies insures that there is no premature interruption of the administrative process and that the administrative agency involved has an opportunity to correct its own errors. *McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194, *cited in Bruan*, 502 F.Supp. at 905.

■ It is not a foregone conclusion that the exhaustion doctrine should apply to NASD, a private corporation. However, at least three Circuits have applied the exhaustion doctrine to similar NASD cases. *See First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 695 (3d Cir.1979), *cert. denied* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. National Association of Securities Dealers, Inc.*, 616 F.2d 1363, 1369 (5th Cir.1980), and *Mister Discount Stockbrokers v. S.E.C.*, 768 F.2d 875, 877

(7th Cir.1985). These Circuits conclude that NASD's status as a registered national securities association pursuant to specific statutory authorization requires NASD to perform many of the same functions as a public administrative agency. *See* 15 U.S.C. § 78*o* ; *First Jersey Securities,* 605 F.2d at 696; *Merrill Lynch, Pierce, Fenner & Smith,* 616 F.2d at 1367; and *Mister Discount,* 768 F.2d at 876. NASD's supervisory responsibility is subject to a "comprehensive review procedure," which provides for appeal of NASD's determinations to the NASD Board of Governors, the SEC, and finally to the appropriate United States Court of Appeals. *First Jersey Securities,* 605 F.2d at 696; *see also* 15 U.S.C. §§ 78s(d)(2), 78y(a)(1) and 78y(a)(3) (1976). "The quasi-official status of NASD therefore fully activates the policies underlying the exhaustion doctrine and requires the doctrine's application to NASD." *Bruan,* 502 F.Supp. at 905; *see also Westheimer v. Commodity Exchange, Inc.,* 651 F.Supp. 364 (S.D.N.Y.1987) (applicability of exhaustion doctrine to COMEX, an analogous self-regulatory association of broker/dealers).

■ The Second Circuit discussed the exhaustion doctrine in *Touche Ross & Co. v. Securities and Exchange Commission,* 609 F.2d 570 (2d Cir.1979). That decision recognized only one exception to the exhaustion requirement: when an agency action "is plainly beyond [the agency's] jurisdiction as a matter of law or is being conducted in a manner that cannot result in a valid order," then recourse to the courts is available before administrative remedies have been exhausted. *Touche Ross,* 609 F.2d at 576, *quoting Sterling Drug, Inc. v. Weinberger,* 509 F.2d 1236, 1239 (2d Cir. 1975) (Friendly, J.). The circumstances of this case do not lie within that exception to the administrative exhaustion doctrine.

The MPV investigation was not beyond NASD's jurisdiction; rather, NASD was obligated to investigate the allegations against MPV made by confidential informants. Section 19(h)(1), 15 U.S.C. § 78s(h)(1) authorizes the SEC to suspend or revoke the registration of any self-regulatory organization that fails to enforce compliance with the Securities and Exchange Act of 1934, 15 U.S.C. § 78a *et seq.,* SEC regulations, and the rules of the self-regulatory organization. Because this case does not fall within the exception to the exhaustion doctrine, plaintiff's complaint must be dismissed for lack of subject matter jurisdiction.

■ Defendant moves to dismiss for lack of subject matter jurisdiction also on the ground that plaintiff fails to prove the requisite amount in controversy pursuant to 28 U.S.C. § 1332. Plaintiff alleges that its interest in membership in NASD exceeds $50,000, the requisite amount, and that the investigative documents at issue involve the "multi-million dollar operations" of MPV. (Amended Complaint ¶ 6) The burden of proof to establish jurisdictional prerequisites lies with the party seeking to invoke the court's jurisdiction. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936), *Kheel v. Port of New York Authority,* 457 F.2d 46, 49, *cert. denied,* 409 U.S. 983, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972). For this reason, the amount in controversy is calculated from the plaintiff's standpoint.

■ Defendant asserts that plaintiff's damages from denial of access to the investigative records are "too indirect and speculative to support federal jurisdiction," *Kheel,* 457 F.2d at 49, and that there is no basis on which to value MPV's interest in membership above $50,000. Plaintiff has made no showing that victory in this lawsuit would lead directly or indirectly to financial savings. Nor has plaintiff shown that depriving it of access to NASD's investigatory records imposes any financial harm.

The application fee for NASD membership is $1500 (§ 2(h) Schedule A, NASD By–Laws, NASD Manual (CCH) p. 1502). Unlike certain stock exchanges, there is no limit on the number of persons who may become members of NASD, so there is no barrier to free entry which might artificially inflate the value of NASD membership. Plaintiff has not shown that its membership interest exceeds the application fee.

The federal courts cannot take cognizance under § 1331 of cases in which the rights are not capable of valuation in monetary terms. And the jurisdictional test is applicable to that amount that flows directly and with a fair degree of probability from the litigation, not from collateral or speculative sources.

*Kheel*, 457 F.2d at 49. As no amount "flows directly and with a fair degree of probability" from the outcome of this litigation, defendant's motion to dismiss must be granted also on the ground that plaintiff has failed to establish the requisite amount in controversy pursuant to 28 U.S.C. § 1332.

For the reasons set forth above, plaintiff's complaint is dismissed.

SO ORDERED.