**DATEK SECURITIES CORP, et al., Plaintiffs,**

v.

**NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC., Defendant.**

**No. 94 Civ. 8814 (CBM).**

United States District Court, S.D. New York.

Feb. 6, 1995.

David M. Zensky, Akin, Gump, Strauss, Hauer & Feld, L.L.P. and Simon S. Kogan, New York City, for plaintiffs.

*OPINION ON MOTION TO DISMISS*

**MEMORANDUM OPINION**

MOTLEY, District Judge.

## BACKGROUND

This case arises out of an administrative complaint filed by the National Association of Securities Dealers ("NASD") against the Plaintiffs on June 14, 1994 alleging several hundred violations of the NASD's Rules of Practice and Procedures for the Small Order Execution System ("SOES") over three separate periods between 1991 and 1993.  (¶¶ 11,

18).[1] Plaintiff Datek Securities Corporation, a New York corporation, is a registered broker-dealer and has been a member of the NASD since 1970. (¶ 10). The individual Plaintiffs are present or former Datek employees and are associated members of the NASD. (¶ 11). Defendant NASD is a self-regulatory organization ("SRO") registered with the Securities and Exchange Commission ("SEC") as a national securities association pursuant to § 15A of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78o-3. The Exchange Act assigned the NASD and the other SROs the responsibility for conducting investigations and commencing disciplinary proceedings against member firms and their associated member representatives relating to compliance with the federal securities laws and regulations. *See* 15 U.S.C. § 78o-3(b)(7). The Exchange Act expressly provides that the SEC and the United States Courts of Appeals have the discretion to stay any sanctions imposed by the NASD pending review. 15 U.S.C. §§ 78s(d), 78y(c).

SOES is a computerized trading system that provides for the instantaneous execution of small orders of securities—up to 1,000 shares at the times relevant to this action—strictly on behalf of public customers against market makers for particular securities. (¶ 17). In simple terms, the 1994 NASD disciplinary action charges that separate trades executed by different Plaintiffs on behalf of different Datek clients within five minute periods did not result from independent investment decisions. (¶ 19). Therefore, the NASD charges that when these trades are aggregated, as they must be under the NASD Rules of Practice and Procedure, they violate the 1,000-share maximum. (¶ 19).

Plaintiffs are subject to longstanding institutional bias by the NASD because they have used the SOES to earns profits at the expense of large market makers who often neglect to adjust the spread between their bid and ask prices to reflect changes in the market. (¶¶ 22–23). This prejudice has been manifest in three separate disciplinary proceedings brought in 1989, 1992, and 1993

against Datek and one of the individual Plaintiffs, Sheldon Maschler, regarding SOES transactions. (¶¶ 24–30). The 1992 proceeding ultimately resulted in Datek and Maschler serving six-month suspensions. (¶¶ 27, 29). All three proceedings were marred by bias and conflicts of interest. (¶¶ 24–30). Bias in the 1994 disciplinary proceeding that is the subject of the instant case is reflected in the NASD disciplinary panel's engaging in ex parte evidence gathering and review of material not placed in the record. (¶ 32).

The NASD and its members have additional reasons for being personally biased against Plaintiffs Datek and Maschler. The first of these reasons is these plaintiffs' publicly-disclosed cooperation with an investigation by the United States Department of Justice into potential antitrust violations by the NASD and its member firms. (¶ 33). Second, Plaintiff Maschler has been approached by the SEC to assist it in an investigation of possible instances of "backing away" from trades by numerous powerful NASD member firms. (¶ 34). Finally, the NASD and its members may be seeking to retaliate against the Plaintiffs for the Plaintiffs' damage action against the NASD and various of its members which is pending in another court. (¶ 35).

Plaintiffs are seeking preliminary and permanent injunctive relief restraining the NASD's proceedings based on two related grounds: (1) Defendant's alleged historical and continuing bias against the Plaintiffs; and (2) resulting violations by the NASD of its own Code of Procedure. Defendant NASD has filed a motion to dismiss the Complaint pursuant to Rules 12(b)(1), 12(h)(3) and 12(b)(6) of the Federal Rules of Civil Procedure. The essence of the NASD's argument is that the Plaintiffs have failed to exhaust their administrative remedies. As explained below, Plaintiffs' allegations are not sufficient to bring their Complaint within any of the established exceptions to the exhaustion requirement.

1.  References to relevant paragraphs in the Complaint are cited to as "(¶ __)."

## I. The Applicability of the Exhaustion Requirement.

The dispute between the parties comes down to the applicability of the exhaustion requirement.[2] In *Touche Ross & Co. v. SEC,* 609 F.2d 570 (2d Cir.1979), the Second Circuit described this doctrine and its policy basis:

> The doctrine of exhaustion of administrative remedies is concerned mainly with the timing of judicial review. In general, a litigant is required to pursue all of his administrative remedies before he will be permitted to seek judicial relief. The rationale behind the exhaustion doctrine is that a court's refusal to intervene prematurely in the administrative process gives the agency an opportunity to develop factual findings, to apply its expertise to new issues and to exercise its discretionary powers. 609 F.2d at 574.

With regard to the instant case, "it is well-established that the doctrine of exhaustion of administrative remedies applies with equal force to the disciplinary proceedings of NASD." *Bruan, Gordon & Co. v. Hellmers,* 502 F.Supp. 897, 902 (S.D.N.Y.1980) (Motley, J.) (citing *First Jersey Securities, Inc. v. Bergen,* 605 F.2d 690, 696 (3d Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980)). *See also McLaughlin, Piven, Vogel, Inc. v. NASD,* 733 F.Supp. 694, 696–97 (S.D.N.Y.1980); *Westheimer v. Commodity Exchange, Inc.,* 651 F.Supp. 364, 367 (S.D.N.Y.1987).

## II. Exceptions to the Exhaustion Doctrine.

Plaintiffs rely on *Guitard v. U.S. Secretary of the Navy,* 967 F.2d 737 (2d Cir.1992) in which the Second Circuit listed exceptions to the exhaustion requirement:

> Exhaustion of administrative remedies may not be required when: (1) available remedies provide no "genuine opportunity for adequate relief"; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be "futile"; and (4) in certain instances a plaintiff has raised a "substantial constitutional question." 967 F.2d at 741.

Plaintiffs assert that the second, third, and fourth of these exceptions apply here. Following the Plaintiffs' lead, these are addressed in reverse order below.

### A. Plaintiffs Have Not Raised Any Substantial Constitutional Questions.

■ Plaintiffs assert that they have raised a substantial constitutional question under the Fifth Amendment. Specifically, they claim that the structural and personal biases of the NASD make it impossible for Plaintiffs to receive a fair hearing before the NASD, and, thus, that the NASD's disciplinary proceeding violates the Due Process Clause. This argument fails for two reasons. First, claims of agency bias are not sufficient to bypass the exhaustion requirement. Second, the NASD is a private corporation not subject to the strictures of the Constitution.

■ The law in the Second Circuit under *Touche Ross* is that "allegations of agency bias or prejudgment based on ex parte communications are insufficient for injunctive relief and cannot be reviewed until the agency has made an adverse determination and an appeal has been taken raising these claims on the record as a whole." 609 F.2d at 575. Indeed, this court has itself ruled on bias claims remarkably similar to those asserted by the Plaintiffs. In *Bruan, Gordon & Co. v. Hellmers,* 502 F.Supp. 897 (S.D.N.Y.1980), the plaintiff alleged, *inter alia,* that NASD disciplinary proceedings against plaintiff constituted improperly selective prosecution resulting from a desire to injure the plaintiff. *Id.* at 904. Concerning this claim of agency bias, this court stated that "a federal district court in the [Second] Circuit may not assert its jurisdiction to try such an allegation. The agency involved must be allowed to speak in the first instance." 502 F.Supp. at 906 Indeed, if the present Plaintiffs' claims of institutional or personal bias were held to be a

---

2. In their Complaint, Plaintiffs assert generally that they have already exhausted their administrative remedies. (¶ 8.) However, in their response memorandum, Plaintiffs have shifted to arguing that they fit one or more of the established exceptions to the exhaustion requirement. (Pls.'s Mem.Opp'n Mot. Dismiss at 7.)

sufficient basis for assumption of jurisdiction by the federal courts and the granting of injunctive relief notwithstanding the failure to exhaust, the Congressionally approved scheme of self-regulation pursuant to which the NASD commences more than 900 disciplinary proceedings each year would be totally undermined and would grind to a halt. *See First Jersey Securities,* 605 F.2d at 698.

The Plaintiffs' claim to have raised a substantial constitutional question also fails because the NASD is not a governmental actor subject to the Fifth Amendment. "As a matter of substantive constitutional law the state-action requirement reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments[.]' " *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 936, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). This court and others in this Circuit have noted that the NASD is a private, rather than a governmental, actor. *See, e.g., Bruan, Gordon,* 502 F.Supp. at 903 ("The fact that NASD may be considered an arm or agent of the SEC with respect to disciplinary proceedings certainly does not transform officials of NASD into federal executive officers."); *McLaughlin, Piven, Vogel,* 733 F.Supp. at 696 (characterizing NASD as a private corporation); *Maschler v. NASD,* 827 F.Supp. 131, 131 (E.D.N.Y.1993) (describing NASD as "a private association of securities broker-dealers registered with" the SEC). *Cf. United States v. Solomon,* 509 F.2d 863, 867–69 (2d Cir.1975) (Friendly, J.) (rejecting argument that New York Stock Exchange is subject to the self-incrimination clause because "[m]ost of the provisions of the Fifth Amendment ... are incapable of violation by anyone except government in the narrowest sense").

## B. Administrative Appeal Has to Been Shown to be Futile.

■ Plaintiffs' second argument for making an exception to the exhaustion requirement is that exhaustion of administrative remedies would be futile because the NASD disciplinary panel has engaged in ex parte evidence gathering and review of material not put into the record. However, as noted above, in *Touche Ross,* the Second Circuit expressly stated that exhaustion of administrative remedies is required even when a party complains of "prejudgment based on ex parte communications." 609 F.2d at 575. Moreover, Plaintiffs offer no reason for this court to conclude that the alleged improprieties cannot be cured through resort to the multilayered administrative review process provided by statute. As the Seventh Circuit has explained, this process provides numerous opportunities for correction of such defects:

> The disciplinary process established by the NASD provides that the NASD Regional District Business Conduct Committee ("District Committee") has original jurisdiction of all complaints regarding member violations, and may conduct hearings, make findings, and impose penalties. Any final action taken by the District Committee is, upon timely application of an aggrieved party, subject to review by the NASD Board of Governors, which considers the record before the District committee and "such other evidence as it may deem relevant" and may in turn either affirm, reverse, or modify the action taken by the District Committee. Any final disciplinary sanction imposed by the Board of Governors is subject to review by the [SEC], 15 U.S.C. § 78s(d), and final orders of the [SEC] are reviewable only in the United States Courts of Appeals. 15 U.S.C. § 78y(a). *Mister Discount Stockbrokers, Inc. v. SEC,* 768 F.2d 875, 876 (7th Cir.1985).

## C. Plaintiffs Have Not Made a Sufficient Showing of Irreparable Injury.

Plaintiffs' final argument for an exemption to the exhaustion rule is that irreparable injury will occur unless this court intervenes immediately. Plaintiffs' argument for this assertion is that since the NASD has indicated that it will consent to a stay of its sanctions pending review only if a sanction less than a permanent bar is imposed, the possibility of a bar means that the court must enjoin the NASD's disciplinary proceedings. (Pls.'s Mem. Opp'n Mot. Dismiss at 12; *see also* R. at 28.)

■ The Second Circuit has cautioned that the irreparable harm exception is a very narrow one that is to be applied only in rare circumstances. *See Miss America Organization v. Mattel, Inc.,* 945 F.2d 536, 545 (2d Cir.1991). Even leaving aside the speculative nature of Plaintiffs' argument, the potential threat is not sufficient to justify a departure from the exhaustion doctrine. The Exchange Act expressly provides that the SEC and the United States Courts of Appeals have the discretion to stay any sanctions pending review. 15 U.S.C. §§ 78s(d), 78y(c). The fact that such stays are discretionary does not mean that the Plaintiffs are entitled to injunctive relief. As this court has previously stated, such an argument "turns the exhaustion requirement on its head. The way to demonstrate that a remedy is inadequate is to exhaust it or point to prior demonstrated inadequacies." *Bruan, Gordon,* 502 F.Supp. at 908. As both sides in this case note, two of the Plaintiffs here have been the subject of a similar proceeding in the past and survived a six-month suspension. This fact alone greatly undermines any claim of irreparable harm.

## CONCLUSION

For all of the above reasons, Defendant's motion to dismiss the complaint is granted.